IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| C & A Pro, LLC, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Plaintiff, ) | **GRANT OF MOTION TO DISMISS** |
| -vs- ) | |
| ) | |
| Global Polymer Industries, Inc. and ) | |
| Slydog of South Dakota, Inc., ) | Civil File No. 3:05-cv-53 |
| ) | |
| Defendants. ) | |

Before this Court is a Motion to Dismiss for Lack of Personal Jurisdiction (doc. #41) filed by Global Polymer Industries and Slydog of South Dakota.

**Summary of Decision**

The Court finds that it does not have personal jurisdiction over either Defendant. As such, the Court **GRANTS** Defendants' Motion to Dismiss.

**Factual Background**

Plaintiff C & A Pro, LLC ("C & A") is the holder of the '008 patent, which pertains to an all plastic ski with a unique bushing structure. Defendant Global Polymer Industries ("Global") is a South-Dakota based plastic compression molding company that manufactures several products, including snowmobile skis. Defendant Slydog of South Dakota ("Slydog") is a marketing and distribution company focused on snowmobile products. The two Defendants produce and market skis in tandem, with Global manufacturing the skis to Slydog's specifications, and with Slydog marketing and selling those skis under the "SLYDOG" brand.

In the late 1990's Global manufactured skis for C & A Plus, Inc., the predecessor of C & A Pro, LLC, and the marketer of the "C & A PRO" brand of snowmobile skis. Slydog did not exist at this time. The skis Global manufactured for C & A utilized the patented '008 design. Plaintiff claims that skis manufactured by Global, and sold by Slydog, utilize the patented '008 design.

Plaintiff seeks a preliminary injunction against both Global and Slydog barring the manufacture, sale or use of the allegedly infringing ski design. (doc. #5). Defendants contend that the design currently manufactured and marketed is a variant of the patented design, and thus an injunction is improper. Global and Slydog further challenge the Court's exercise of personal jurisdiction. (doc. #41). Because jurisdiction over the Defendants is a necessary prerequisite to the proper issuance of an injunction, the Court first addresses the matter of personal jurisdiction.

**Argument**

In patent infringement cases, the law of the Federal Circuit that governs the application of personal jurisdiction. Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1354 (Fed. Cir. 2002); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564-65 (Fed. Cir. 1994). A Court may properly exercise personal jurisdiction over a party if a two-step inquiry is satisfied. Hildebrand, 279 F.3d at 1354. First, the party must be "amenable to service of process under the appropriate long-arm statute." Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Secondly, the activities of the non-consenting party must "satisfy the minimum contacts requirement of the Due Process Clause." Hildebrand, 279 F.3d at 1354 (citing Int'l Shoe, 326 U.S. at 316); Graphic Control Corp. v. Utah Medical Products, 149 F.3d 1382, 1386 (Fed. Cir. 1998). The scope of North Dakota's long-arm jurisdiction is set forth in Rule 4(b)(2) of the

North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has interpreted its long-arm statute to be co-extensive with the limits of Due Process. Hanson v. Scott, 645 N.W.2d 223, 230 (N.D. 2003); Hebron Brick Co. v. Robinson Brick and Tile Co., 234 N.W.2d 250, 255-56 (N.D. 1975). Thus, the two step-inquiry merges into a single question: whether the Court's exercise of personal jurisdiction over Global and Slydog would violate Due Process. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998); RDO Foods Co. v. United Brands Int'l Inc., 194 F.Supp. 2d 962, 967 (D.N.D. 2002).

A state's jurisdiction over a non-consenting party does not offend Due Process if the party has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). These minimum contacts may give rise to either "specific jurisdiction" or "general jurisdiction." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984). Specific jurisdiction exists when the Defendants' contacts with the forum state stem from, or are related to, the cause of action. Id. General jurisdiction exists when the Defendants' contacts with the forum state are unrelated to the present suit but are "continuous and systematic." Id.

Plaintiff bears the burden of showing that jurisdiction exists. Inamed Development Co., v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001). All factual disputes are resolved in favor of the Plaintiff and all evidence is viewed in a light most favorable to Plaintiff. Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002).

General Jurisdiction

In order for general jurisdiction to be properly exercised, the Defendant's contacts with the forum state must be "continuous and systematic" or "substantial." Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir.1986). In essence, the contacts with the forum state must be so pervasive and developed that they are interchangeable with the entity's physical presence in the forum. ESAB Group v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997). The standard for establishing this is "fairly high." Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citing Brand, 796 F.2d at 1073).

Neither Global nor Slydog are residents of North Dakota. Both are South Dakota corporations, each with their headquarters and principal place of business in South Dakota. (June 16th Huntimer Decl, ¶¶ 2, 8). Moreover, Global and Slydog maintain no physical presence in the state of North Dakota. Neither company utilizes storage, distribution or manufacturing facilities in North Dakota, nor does either entity have retail or wholesale stores in the forum state. Id. Further, neither corporation has employees, agents, bank accounts or real property in North Dakota. Id.

In terms of actual sales, Global's business over the past ten years in the state of North Dakota has included only sporadic dealings with five customers totaling $26,606.14, or about 0.15% of Global's total business. (June 16th Huntimer Decl, ¶ 10) The total number of phone calls related to these dealings total 127, which constitutes less than 0.35% of Global's 36,000 calls during the same period. Similarly, since Slydog's incorporation, its sole sale into the state of North Dakota was one ski package for $395.89. (June 16th Huntimer Decl, ¶ 3). This Court finds that such limited contact does not rise to level necessary to establish general jurisdiction.

Other courts have made similar findings: Stairmaster Sports/Med. Prods., Inc. v. Pacific Fitness Corp., 78 F.3d 602, 1996 U.S. App. LEXIS 1840 (Fed. Cir. 1996) (unpublished table decision); ESAB, 126 F.3d at 624; Trost v. Jason Bauer, &Azuradisc, 2001 U.S. Dist. LEXIS 10311 (D. Ill. 2001); Hi-Tex, Inc. v. TSG, Inc., 87 F. Supp. 2d 738, 743 (D. Mich. 2000); Hockerson-Halberstadt, Inc. v. Costco Wholesale Corp., 2000 U.S. Dist. LEXIS 8290 (D. La. 2000); VP Intellectual Properties, LLC v. Imtec Corp., 1999 U.S. Dist. LEXIS 19700 (D.N.J. 1999); Haas v. A. M. King Indus., Inc., 28 F. Supp. 2d 644, 648 (D. Utah 1998).

Nor has Global or Slydog engaged in marketing efforts directly targeting the North Dakota market. Global and Slydog both maintain websites, on which product and service information is listed. However, an internet website is not sufficient to establish personal jurisdiction, absent evidence evincing an intent to particularly target the forum state. Trintec v. Pedre Promotional Prods., 395 F.3d 1275, 1281 (Fed. Cir. 2005); Maynard v. Phila. Cervical Collar Co., 18 Fed. Appx. 814, 816-17 (unpublished opinion) (Fed. Cir. 2001); Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 512 & n.5 (D.C. Cir. 2002)("essentially passive" websites alone cannot confer personal jurisdiction); GTE New Media Servs. v. BellSouth Corp., 199 F.3d 1343, 1348 (D.C. Cir. 2000); Mink v. AAAA Dev. LLC, 190 F.3d 333, 337 (5th Cir. 1999); SOMA Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1297 (10th Cir. 1999). Global's website contains no feature where a visitor can order products or services. Similarly, Slydog's website, at least at the present time, is incapable of fulfilling sales orders over the internet. As such, both of these sites would be considered "passive" websites. Bancroft, 223 F.3d at 1086.

Again, the standard for establishing general jurisdiction is "fairly high." Id. By way of

5

example, the Supreme Court found that there was no jurisdiction over a foreign corporation even when that corporation sent an officer to a forum for a negotiating session, accepted checks drawn from a bank in the forum, purchased equipment from that forum, and sent personnel to that forum to be trained.  Brand, 796 F.2d at 1073 (citing Helicopteros, 466 U.S. at 416).  Based on the evidence before it, and viewing all evidence in a light most favorable to Plaintiff, this Court finds that it does not have general jurisdiction over Global or Slydog.

Specific Jurisdiction

The Federal Circuit has set forth a three-prong test to adjudge whether there are sufficient minimum contacts to warrant specific jurisdiction: (1)  Whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair.  Silent Drive, Inc. v. Strong Indus., 326 F.3d 1194, 1202 (Fed. Cir. 2003).

The first requirement, that of "purposeful availment," safeguards non-consenting parties from the possibility of being subject to suit in a foreign jurisdiction solely as a result of "random, fortuitous, or attenuated contacts."  Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980).  A non-resident defendant must instead engage in "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  "Purposeful availment"demands that the non-consenting party undertake some action to create a sufficient connection with the forum state, and that these contacts may

not alone rise out of the "unilateral activity of another party or a third person." Helicopteros, 466 U.S. at 417.

The Court observes that only three pairs of allegedly infringing skis have crossed the border into North Dakota. (Fenner Decl., ¶10). The first two pairs were sent to Jeff Meidinger of Wishek, North Dakota. Mr. Meidinger is a technical consultant with Snowtech Magazine, a magazine dealing with snowmobiling, which is published out of Alexandria, Minnesota. (Nov. 14, 2005 Meidinger Decl., ¶5). It must be noted that there exists a discrepancy between the October 14th, 2005 Declaration of Jeff Meidinger, which is prepared by Plaintiff's counsel, and the November 4th and 14th Declarations of Jeff Meidinger, which were prepared by defense counsel. This earlier declaration serves as the basis for Plaintiff's contention that Jamie Fenner was an employee of Slydog when he visited North Dakota to see Jeff Meidinger in November of 2004. Mr. Meidinger states in both the November 4th and 14th declarations:

> "I signed several declarations prepared by [Plaintiff's counsel]. Unfortunately, not appreciating the important [sic] of some of the specific statements made in these declarations, I signed these declarations without carefully considering the language written by [Plaintiff's counsel]."

(Nov. 4th, 2005 Meidinger Decl., ¶ 2; Nov. 14th, 2005 Meidinger Decl., ¶ 2). The Court also notes, although does not assign weight to, Mr. Medinger's contention that he signed the earlier declaration in an attempt to abate insistent and repeated phone calls from Plaintiff's counsel. Despite the evidence to the contrary (Fenner Decl., ¶¶ 2, 4; Nov. 4th, 2005 Meidinger Decl., ¶¶ 3, 4; Nov. 14th, 2005 Meidinger Decl., ¶¶ 3, 4) the Court will view this evidence in the light most favorable to the Plaintiff, and will assume, for jurisdictional analysis purposes, that Jamie

Fenner was an employee of Slydog when he visited Mr. Meidinger.

Assuming the above, the Court still reads the contact between Fenner and Meidinger as Global and Slydog's attempt to exploit the personal contacts of Jamie Fenner, one of their employees, who knew Jeff Meidinger on a personal and professional level prior to Fenner's employment with Slydog. (Nov. 14th, 2005 Meidinger Decl., ¶3; Fenner Decl., ¶3) This contact, the Defendants hoped, would result in a review of their products by one of the few magazines dedicated to the sport of snowmobiling. Also, the Court notes that Meidinger is not currently, nor ever has been, a dealer of Global Polymer or Slydog equipment. Moreover, Mr. Fenner never discussed the possibility of such representation or the sale of Slydog skis. (Nov. 14th, 2005 Meidinger Decl., ¶¶ 7, 13). Rather, the skis were shipped to North Dakota solely because that was the location of Mr. Meidinger's residence. The skis were not shipped to a dealer, distributor, or agent in North Dakota, nor were they even shipped with the intent that they purchased, sold, repurchased, or resold. Indeed, Mr. Meidinger has not sold the skis he obtained from Jamie Fenner. (Nov. 14th, 2005 Meidinger Decl., ¶ 13). The determination of purposeful availment is not dependent on the mere presence of one's goods inside the forum state, but rather on the intent that those goods enter the stream of commerce once there. See World-Wide, 444 U.S. at 297-98. Given that it was mere happenstance that Mr. Meidinger lived in North Dakota, the Court finds that Global and Slydog did not purposely avail themselves of the benefits and privileges of the laws of North Dakota, nor did they intend the skis to enter the North Dakota marketplace, when they shipped the skis to Mr. Meidinger.

The only pair of skis actually sold in the state of North Dakota came about through the machinations of Plaintiff's counsel. The order was placed on February 24, 2005 and shipped to

an address in Fargo, North Dakota.  This is the same address utilized by C & A's registered North Dakota agent.  The Court also observes that a person with the same name as C & A's registered North Dakota agent repeatedly called Mr. Meidinger to ask, to no avail, whether he was a dealer of Slydog skis and whether he would sell the caller a pair of Slydog skis. Courts have repeatedly held that jurisdiction may not be "manufactured" by an adverse party injecting another party's product into the forum state.  Maynard, 18 Fed. Appx. at 817; Chung v. NANA Development Corp., 783 F.2d 1124, 1127 (4th Cir. 1986); ESAB, 34 F. Supp 2d at 332-33; Edberg v. Neogen Corp., 17 F. Supp 2d 104, 112 (D. Conn. 1998).  The Court thus attributes no weight to this isolated sale, and finds that were no sales of the allegedly infringing ski into the North Dakota market.

   Also at issue are alleged phone contacts between the State of North Dakota and Global and Slydog.  Plaintiff argues that Global and Slydog placed two calls to Jeff Meidinger to discuss the allegedly infringing ski. In addition, Plaintiff opines that Gary Ulmer, who Plaintiff characterizes as a "reseller" called Mr. Meidinger and discussed Slydog skis.  Lastly, Plaintiff argues that Steve Renslow of the Red River Snowmobile Club in Grand Forks, North Dakota, called the Slydog Offices.

   Even resolving all factual disputes in favor of Plaintiff, these five phone calls, standing alone, do not suffice to constitute purposeful availment of the protections of the forum state.  See Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1103, (8th Cir. 1996) (The purposeful shipment of machines to an Alabama corporation, and over one hundred phone calls to and from Alabama was insufficient to confer personal jurisdiction over an Alabama corporation).

Plaintiff also argues that Defendant attended various trade shows in North Dakota in order to promote the allegedly infringing skis. One such trade show was the 2002 Big Iron Agricultural trade show in Fargo. The Court finds the evidence to support Plaintiff's contention to be lacking, at best. C&A's sole support for this contention is the declaration of Matthew Lautt who "believes" a representative at the show stated they were from South Dakota. (Lautt Decl. ¶ 9). Lautt also states that this representative gave him a brochure, although he is currently unable to locate this brochure. (Lautt Decl. ¶ 10) Three years later, Lautt viewed snowmobile skis on Sydog's website and stated that these skis "appear" to be same skis he saw at the Big Iron Show back in 2002. (Lautt Decl. ¶ 11). He also allegedly posted comments about the "Slydog Skis" on an online snowmobile discussion forum under the colorful user name "Circus Midget." (Lautt Decl. ¶ 13).

Such a recollection of events contravenes the statements of several witnesses. First, Slydog was not in existence until 2004, which would make attendance at the 2002 trade show an apparent impossibility. Global Polymer additionally argues that it has never attended any trade show in North Dakota, including the Big Iron trade show. (Nov. 8, 2005 Huntimer Decl. ¶ 10). This is supported by the testimony of Chaun Merkens, the Exhibit Coordinator of the 2002 Big Iron show. (Merkens Decl. ¶¶ 2-3). Further, Global did not develop the allegedly infringing ski until late 2003, and Slydog did not offer any skis whatsoever until 2004. (Nov. 8, 2005 Huntimer Decl. ¶11). Still, despite the voluminous evidence to the contrary, the Court will, for purposes of determining jurisdiction, assume Slydog attended the Fargo Big Iron show.

The second factor for specific jurisdiction is whether Plaintiff's claims arise out of Defendant's contacts with the state. Plaintiff advances the argument that patent infringement is a

"tort." Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1579 (Fed. Cir. 1986). Because the infringing sale occurred in North Dakota, that is also the site of the tort, and jurisdiction is thus proper. Beverly Hills Fan, 21 F.3d at 1571. This argument is ultimately persuasive as it requires the purposeful injection of the infringing good into the forum state's stream of commerce. As noted above, this Court rejects the singular sale of the allegedly infringing skis as a gambit by Plaintiff's counsel to establish jurisdiction. Therefore, there is no "tort" that would confer jurisdiction. Further, even if there were an intentional tort committed in North Dakota, and its harmful effects were forseeable, jurisdiction is still improper without other contacts to the forum state. See Dayton Enters., LLC v. Dunker, 142 F. Supp. 2d 1177, 1184-85 (D.N.D. 2001) (citing Hicklin Engineering, Inc., v. Aidco, Inc., 959 F.2d 738, 739 (8th Cir. 1992). Thus, the Court finds that there is no nexus between the Defendant's contacts with the forum state and the underlying claim.

  The third and last factor in determining purposeful availment is whether the Court's assertion of jurisdiction would be "reasonable and fair." Silent Drive, 326 F.3d at 1202. Here, the Court is to balance (1) the burden on the defendant; (2) the interests of the forum state; (3) plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies. World Wide Volkswagen, 444 U.S. at 292; Viam Corporation v. Iowa Export-Import Trading Co., 84 F.3d 424, 429 (Fed. Cir. 1996).

   As the first and fourth factors parallel one another in the instant case, the Court addresses them simultaneously. Neither Slydog nor Global reside in North Dakota. Neither entity was incorporated in North Dakota. They maintain no agents or representatives in the state,

11

and have no manufacturing centers, offices, warehouses or vehicles in state.  Moreover, all of Defendants' business records and relevant trial witnesses are located in South Dakota.  Further, the allegedly infringing inventory is also located in South Dakota.  The Court finds it would be clearly inefficient to try the case in North Dakota, and would constitute an unreasonable burden on the Defendant.

Turning to factor two, that of North Dakota's interest in the present controversy, the Court finds that North Dakota has a clear interest in providing a legal forum for its residents.  It is questionable, however, whether C & A Pro even maintains a business address in the State of North Dakota.  The address alleged in the Plaintiff's complaint is actually occupied by an unrelated financial services company.  (Lyman Decl., ¶ 3).  This company has occupied that address since at least 2003.  The property in question is owned by Plaintiff's counsel and is the site of his law office.  (Lyman Decl., ¶ 5).  Further, the sign facing the adjacent roadway, as well as the directory on the building, does not list C& A as a tenant of the property.  (Lyman Decl., Ex. 2-3).  Lastly, C & A Pro's website does not contain any contact information for a North Dakota address or phone number, instead listing its mailing address as being in Hutchinson, Minnesota.

Turning to the third factor, the Court notes Plaintiff certainly has a interest in seeking legal redress for alleged wrongs.  However, this interest does not give one carte blanche to file suit in the forum of their choosing.  It is equally true that the residence of one's attorney does not factor into a jurisdictional analysis.  Plaintiff's claim can still be fully resolved on the merits, and Plaintiff can seek full relief, in another, more appropriate, forum.

Lastly, North Dakota has a strong interest in providing a forum for legal redress for

residents and entities aggrieved by the actions of others. However, states also have a strong interest in preserving judicial resources and protecting themselves from transparent jurisdictional manipulation. The exercise of jurisdiction here would not further any state social interest and would constitute a waste of the litigant's resources. Upon balancing all of the above factors, the Court finds that there exists no specific jurisdiction over the Defendants.

## Conclusion

The Court finds that the Defendant's contacts with the forum are not "continuous and systematic," nor has the Defendant purposefully availed themselves of the privileges and protections of North Dakota. Therefore, the Court finds that it would be improper to exercise either general or specific jurisdiction over the Defendants. The Court thus **GRANTS** Defendant's Motion to Dismiss, and Plaintiff's Motion for an injunction is hereby rendered **MOOT**.

**IT IS SO ORDERED**.

Dated this 24th day of March, 2006.

_____
Ralph R. Erickson, District Judge
United States District Court